[Cite as *Benchmark Contrs., Inc. v. Southgate Mgt., L.L.C.*, 2014-Ohio-1254.]
## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Benchmark Contractors, Inc., | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 13AP-390 |
| | | (C.P.C. No. 10CV-6700) |
| Southgate Management LLC et al., | : | |
| Defendants-Appellees, | : | (REGULAR CALENDAR) |
| Southgate Shopping Center, LLC and Albany Group Holdings, LLC, | : | |
| | : | |
| Defendants-Appellants. | | |
| | : | |
| Benchmark Contractors, Inc., | : | |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | No. 13AP-394 |
| | | (C.P.C. No. 10CV-6700) |
| Southgate Management LLC, | : | |
| Defendant-Appellant, | : | (REGULAR CALENDAR) |
| | : | |
| Southgate Shopping Center, LLC et al., | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on March 27, 2014

*Isaac Wiles Burkholder & Teetor, LLC, Mark A. Glumac* and *Dale D. Cook*, for appellee Benchmark Contractors, Inc.

*Zacks Law Group, LLC, Benjamin S. Zacks, James R. Billings* and *Robin L. Jindra*, for appellant Southgate Management LLC.

*Wittenberg Law Group*, and *Eric J. Wittenberg*, for appellants Southgate Shopping Center, LLC and Albany Group Holdings, LLC.

APPEALS from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1}   In consolidated appeals, defendants-appellants, Southgate Management LLC, Albany Group Holdings, LLC, and Southgate Shopping Center, LLC, appeal a judgment of the Franklin County Court of Common Pleas in favor of plaintiff-appellee, Benchmark Contractors, Inc. ("Benchmark"). For the reasons that follow, we reverse and remand for further proceedings.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   In May 2010, Benchmark[1] filed a complaint against Southgate Management LLC ("Southgate") stating: "Defendant owes Plaintiff $29,753.10 according to the account attached hereto as Exhibit 'A.' " (R. 2, Complaint.)   Exhibit A was an invoice indicating Benchmark removed and replaced a roof at 2920 South High Street for $47,826.18, and Southgate owed a balance of $29,753.10 for the work.

{¶ 3}   Southgate filed a motion to dismiss or, in the alternative, a motion for a more definite statement, which the trial court denied.  Subsequently, Southgate filed an answer and counterclaim.  Southgate alleged it was a property management company.  In February 2009, a wind storm damaged the roof of the building at 2920 South High Street in Columbus, Ohio ("2920").   Southgate submitted a claim to Nationwide Mutual Insurance Company ("Nationwide") for the damage.  On Nationwide's recommendation, Southgate "hired Benchmark to conduct the roofing repairs at [2920] and at multiple other residential and commercial properties controlled by Southgate which also suffered wind damage as a result of the February 2009 [s]torm." (R. 39, 5.)  Benchmark agreed to perform the repairs and provide a warranty for 2920 and the other properties.  Southgate alleged Benchmark breached their agreement, and Southgate sought a declaratory judgment.  Benchmark also filed a third-party complaint against Nationwide but later voluntarily dismissed it.

[1] Benchmark initially filed suit under the name Benchmark Roofing; however, the court later amended the complaint to change the name to Benchmark Contractors, Inc.

{¶ 4}   Before the bench trial began on January 22, 2013, Southgate pointed out the fact that its name did not appear on the written contract Benchmark had for the work performed at 2920.   After the trial started, Benchmark filed a Civ.R. 15(A) motion for leave to amend the complaint.   Benchmark argued Southgate Shopping Center, LLC ("SSC") and Albany Group Holdings, LLC ("Albany") were the proper defendants and asked the court to substitute them in place of Southgate.   Benchmark attached the "original contract" for the roof work at 2920 to its motion. (R. 135, exhibit D.)   On this standard form contract, the name "Dr. Lake" appears on the "Owner" line.   (Exhibit D.) However, the name was crossed out and replaced with SSC and Albany.   The "Address" line states 2900-2912-2920. (Exhibit D.)   Benchmark alleged that Albany and SSC in fact owned the buildings at those addresses.   On the "OWNER'S Signature" line, it appears Dr. Lake signed his own name and put the word "manager" after it on March 24, 2009. (Exhibit D.)   But "[t]hrough course of conduct and communication," Benchmark came to the belief that Southgate was a party to the contract. (R. 135, 2.)   Southgate received the bills and the first check to Benchmark "was drawn on a Southgate * * * account and had an identical signature to that on the [c]ontract." (R. 135, 2-3.)

{¶ 5}   According to Benchmark, SSC and Albany defended against this lawsuit "wearing the mask" of Southgate such that SSC and Albany could be substituted as defendants under *Boehmke v. Northern Ohio Traction Co.*, 88 Ohio St. 156 (1913). (R. 135, 5.)   Benchmark reasoned that, if SSC and Albany were not involved, Southgate would have argued at the outset of the case that it was an improper party.   Instead, Southgate filed a counterclaim and made arguments about Benchmark's workmanship.   Benchmark believed Dr. Lake was "the principal" of Southgate, SSC, and Albany given the presence of his signature on the contract and check from Southgate. (R. 135, 3.)   Benchmark also believed the three entities shared a P.O. Box.   In addition, Benchmark claimed it perfected service of its complaint on Southgate at 2900 South High Street ("2900"), which Albany owned at the time.

{¶ 6}   The trial court received a copy of Benchmark's motion on the second day of trial and the parties made oral arguments regarding the motion.   However, the court decided to proceed with the trial and gave Southgate an opportunity to respond to the motion for leave to amend the complaint in writing before issuing a ruling.

{¶ 7}   At trial, Dwayne Bailey, a Nationwide claims specialist, testified Southgate had an insurance policy through Nationwide for 2920 but did not remember if other named insureds were on the policy.   Bailey testified he sent an estimate for the 2920 repair work to Southgate and Nationwide made all payments under the policy to Southgate.   Dr. Lake was the only person affiliated with Southgate whom Bailey met. Bailey averred in an affidavit that Dr. Lake owned Southgate, but at trial admitted he did not know anything about Southgate.   In particular, he did not know who owned or managed it.   Bailey thought Dr. Lake hired Benchmark for the roof work at 2920 because each time Bailey inspected the roof, Dr. Lake had Benchmark there to represent him.   Dr. Lake was present for at least one inspection.

{¶ 8}   Jason Whiteley, Benchmark's general manager, testified in February 2009 he was a branch manager for Benchmark.   Whiteley testified Benchmark did roofing work for Southgate at 2920, and Southgate still owed Benchmark over $27,000.   Whiteley dealt exclusively with Dr. Lake on the project and assumed he owned Southgate.   Benchmark only sent invoices to Southgate, and Whiteley witnessed Dr. Lake sign one check to Benchmark.   Dr. Lake signed the check as manager, and the memo line indicated the check is the final payment for all residential work and the work at 2900 and 2912 South High Street.   In addition, Benchmark received a $25,000 check drawn on a Southgate account, evidently signed by Dr. Lake as manager, for the deposit on the work at 2920.

{¶ 9}   Whiteley admitted he did not know if Dr. Lake signed the March 2009 contract but thought the signature on the contract matched the signature on the check he saw.   Also, Whiteley did not know the circumstances that led to Dr. Lake's name being crossed out on the contract and replaced with SSC and Albany or when that change occurred.   When asked who typically filled out contracts at Benchmark, Whiteley testified that it "kind of depends on the salesman." (Tr. Vol. II, 201.)   Whiteley testified Mike Black was the Benchmark salesperson involved with 2920.   Whiteley never worked with or supervised Black, and Black had since left Benchmark.   Black is listed as a project manager on the March 2009 contract.   Whiteley also did not know why SSC's name appeared on Benchmark's warranty for 2920.

{¶ 10} Diane Bush, a property manager, testified Southgate had employed her for four years but CSF Association paid her.   As part of her duties, she managed 2920. However, in 2009 when Benchmark worked on the roof for 2920, she was not the

property manager and just did medical billing for Southgate. Bush was acquainted with Dr. Lake but did not know his relationship to Southgate. Bush was Southgate's main contact with its attorneys for the past three years but did not know who paid the attorneys.

{¶ 11} Southgate hired William Pizzino, a civil engineer, to inspect the roof at 2920. Pizzino testified about deficiencies he observed in the roof. Patrick Swanson, a contractor, also testified on behalf of Southgate about problems he observed with the roof of 2920.

{¶ 12} Also, during trial Benchmark attempted to argue statements in Southgate's counterclaim amounted to a judicial admission that Southgate was a party to the contract. In response, Southgate notified the court that going forward it was no longer pursuing its counterclaim for "breach of contract and breach of warranty" but still sought a declaratory judgment regarding the parties' rights. (Tr. Vol. III, 418.)

{¶ 13} After the trial concluded, Benchmark made a supplemental filing in support of its motion for leave to amend the complaint and directed the court's attention to the insurance policy for 2920 attached to a motion earlier in the proceedings. Benchmark argued the policy demonstrated Southgate, SSC, and Albany "share a common address, hold themselves out to be related, and do business under each other's names." (R. 138.) Benchmark only attached a portion of the policy to its supplement, and that portion indicates the named insured for 2920-2934 South High Street was "SOUTHGATE MANAGEMENT LLC; ALBANY GROUP HOLDINGS LLC - DBA SOUTHGATE SHOPPING CENTER LLC." (Emphasis sic.) (R. 138, exhibits.)

{¶ 14} In its memorandum contra to Benchmark's motion for leave to amend the complaint, Southgate complained Benchmark had possession of the contract since its execution and carelessly sued the wrong entity. Southgate implied the trial court should deny Benchmark's motion and grant a judgment in Southgate's favor because the trial was over and the contract clearly did not mention Southgate. In addition, Southgate argued it was not legally interchangeable with SSC and Albany just because the entities shared a mailing address and might have similar managers. Also, SSC and Albany were not involved in Southgate's defense.

{¶ 15} In its reply memorandum, Benchmark argued, instead of substituting SSC and Albany for Southgate, the trial court should grant Benchmark leave to make SSC and

Albany defendants in addition to Southgate. Benchmark claimed "enough evidence has been presented, through trial testimony, exhibits, and judicial admissions, establishing [Southgate's] liability under the contract." (R. 141, 2.) Benchmark acknowledged Southgate was a separate legal entity from SSC and Albany. In addition, Benchmark admitted it did not know "the exact interworking's [sic] of the three entities" and the relationship between the entities was "confusing to say the least." (R. 141, 4-5.) Nonetheless, Benchmark continued to maintain that SSC and Albany defended the action in Southgate's name.

{¶ 16} On March 12, 2013, the trial court issued an order and entry granting Benchmark's motion for leave to amend, stating "the proper party names shall be added by interlineation," and the defendants were Southgate, SSC, and Albany. (R. 146.) The trial court issued findings of fact and conclusions of law on March 22, 2013. The court found Southgate was a party to the March 2009 contract. The court also found Benchmark was entitled to a judgment against Southgate in its action on an account and on the breach of contract action the parties implicitly tried. The court rejected Southgate's contention that Benchmark failed to perform in a workmanlike manner. The court also found SSC and Albany voluntarily appeared in the action in Southgate's name and would be bound by the court's judgment. On April 5, 2013, the trial court issued additional findings of fact and conclusions of law stating it found for Benchmark and against Southgate, SSC, and Albany jointly and severally.

{¶ 17} On April 10, 2013, the trial court issued a judgment entry ("Entry One") granting Benchmark judgment against Southgate in the amount of $27,537.53 plus 18 percent interest per annum and costs. Later that day, the court issued a second judgment entry ("Entry Two") granting Benchmark judgment against all three defendants, "jointly and severally, in the amount of $27,537.53, plus interest at the contractual rate of 18.000% per annum from June 24, 2009, plus attorney fees at the rate of 33% of the combined principal and interest, together with costs and continuing interest at the contractual rate from the date of this Entry." (R. 153.)

{¶ 18} Then, on April 16, 2013, the trial court issued a nunc pro tunc entry ("Entry Three"). The court explained the parties submitted conflicting judgment entries, i.e., Entry One and Two, and both were docketed "due to clerical error." (R. 156.) The court ruled Entry One was filed in error, and Entry Two properly reflected the terms of the

judgment against all three defendants.  The court amended Entry One and Two to state what Entry Two essentially already stated, i.e., all three defendants were jointly and severally liable to Benchmark for $27,537.53, plus the interest, attorney fees, and costs as originally outlined in Entry Two.

## II.  ASSIGNMENTS OF ERROR

{¶ 19} Southgate appeals and assigns the following errors for our review:

[1.] The trial court committed reversible error by determining that Benchmark had a written contract with Southgate and as a result, Benchmark had no claim for an account against Southgate.

[2.] The trial court committed reversible error in determining that Benchmark Contractors installed the roof system at issue in a workmanlike manner.

[3.] The trial court erred by issuing Entry Two and Entry Three as they are legal nullities and invalid as a matter of law.

[4.] The trial court committed reversible error by issuing a judgment of attorney's fees in favor of Appellee when the issue of attorney's fees was deferred by the court during trial to a later date after liability was determined and where no evidence of attorney's fees was presented at the trial.

[5.] The trial court erred by awarding interest at the contractual rate as there is no express contract between Southgate and Benchmark.

{¶ 20} SSC and Albany also appeal and assign the following errors for our review:

[1.] Appellants Southgate Shopping Center LLC and Albany Group Holdings LLC were denied procedural due process rights afforded in provision [sic] in Section 16, Article I of the Ohio Constitution and the due process of law provision in the Fourteenth Amendment to the United States Constitution by the trial court issuing a judgment against the Appellants post-trial and without providing Appellants with an opportunity to be heard and defend claims.

[2.] Appellants Southgate Shopping Center LLC and Albany Group Holdings LLC were never served with the Complaint or any other court notices by the trial court and as a result, the trial court did not have jurisdiction to render a judgment against Appellants.

[3.] The trial court committed reversible error by granting Appellee's Motion for Leave to Amend and by adding Appellants Southgate Shopping Center LLC and Albany Group Holdings LLC as Defendants to the action and granted a judgment against them after the trial had concluded and years after the litigation commenced.

For ease of discussion, we will discuss the assigned errors out of order.

## III. DISCUSSION

A. *SSC and Albany*

{¶ 21} Under their second assignment of error, SSC and Albany contend the trial court's judgment against them is void because the court lacked personal jurisdiction over them.

{¶ 22} "In order to render a valid judgment, a trial court must have personal jurisdiction over the defendant." *Erin Capital Mgt., L.L.C. v. Fournier*, 10th Dist. No. 11AP-483, 2012-Ohio-939, ¶ 16, citing *Maryhew v. Yova,* 11 Ohio St.3d 154, 156 (1984). If the trial court lacks personal jurisdiction over the defendant, a judgment against the defendant is void. *Great Seneca Fin. Corp. v. Bishop*, 10th Dist. No. 12AP-4, 2012-Ohio-3589, ¶ 7, citing *Green v. Huntley*, 10th Dist. No. 09AP-652, 2010-Ohio-1024. Generally, the existence of personal jurisdiction presents a question of law we review de novo. *Fraley v. Estate of Oeding*, ____ Ohio St.3d. ____, 2014-Ohio-452, ¶ 11, citing *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, ¶ 27.

{¶ 23} "A trial court lacks [personal] jurisdiction if effective service of process has not been made on the defendant and the defendant has not voluntarily appeared in the case or waived service." *Erin Capital Mgt.* at ¶ 16, citing *State ex rel. Ballard v. O'Donnell*, 50 Ohio St.3d 182 (1990), paragraph one of the syllabus, and *Bowling v. Grange Mut. Cas. Co.,* 10th Dist. No. 05AP-51, 2005-Ohio-5924, ¶ 27. Here, Benchmark contends SSC and Albany voluntarily appeared in the case through Southgate and that it made effective service of process on SSC and Albany.

{¶ 24} In its March 22, 2013 findings of fact and conclusions of law, the trial court stated:

**Southgate Shopping Center, LLC and Albany Group Holdings, LLC should be added as Defendants in this matter**.

1. "Courts are not sympathetic to Defendants who are evasive concerning an incorrect name in a complaint." *Thornton v. Hardiman, Buchanan, Howland & Trivers*, 2005-Ohio-1969, ¶ 28 (Ohio App. 8th Dist.).

2. Where one knows himself to be the wrongdoer sought to be made liable in an action of damages for the wrong, and voluntarily appears by his attorney and answers in the name of and ostensibly as another person who was by the plaintiff named as Southgate, and served with process in the mistaken belief that the latter person did the wrong, the former person thereby submits himself to the jurisdiction of the court and may be substituted as the real Southgate in place of the nominal Southgate sued by mistake; and the substituted Southgate will be bound by the verdict and judgment rendered against him in this case. *Boehmke v. Northern Ohio Traction* Co. (1913), 88 Ohio St. 156, [s]yllabus.

3. Southgate Shopping Center, LLC, and Albany Group Holdings, LLC, voluntarily appeared in this action, in the name of and ostensible as Southgate Management, LLC, and will be bound by the judgment rendered in this case.

(R. 147, 14.) Thus, the court found, based on *Boehmke*, SSC and Albany voluntarily appeared in the action.

{¶ 28} The parties disagree about whether *Boehmke* applies. In that case, Boehmke filed a personal injury suit against the Akron, Bedford & Cleveland Company ("ABC") for injuries sustained entering a passenger car on an inter-urban electric railway. The car bore ABC's name and, at the time, the railway was known as the Akron, Bedford & Cleveland line. However, prior to Boehmke's injury, ABC merged with another company and became the Northern Ohio Traction Company ("NOT"). NOT owned and operated the inter-urban line at the time of Boehmke's injury. At the time of the merger, the attorneys of ABC became the attorneys of NOT. The attorneys filed an answer for ABC in October 1900 and signed as attorneys for ABC even though NOT employed them. Until October 1906, the attorneys acted for ABC in the lawsuit. Then, Boehmke moved to substitute NOT for ABC, and the trial court granted the motion over NOT's objection. Boehmke filed an amended petition, and NOT filed an answer through the same attorneys who acted for ABC. Boehmke obtained a favorable verdict, which the circuit court reversed, finding, in part, that the trial court erred when it permitted the party substitution.

{¶ 29} The Supreme Court of Ohio reversed the circuit court's decision, explaining NOT had an interest in defending the lawsuit because any judgment against ABC would have "immediately become the obligation" of NOT. *Id.* at 162. NOT also appeared in the case. NOT admitted "the answer which its attorneys filed in the case was only *ostensibly* the answer of [ABC]; that [NOT] requested its attorneys to prepare and file the answer, and paid them for that service." (Emphasis sic.) *Id.* Therefore, "[t]he inference [was] that the service was rendered for [NOT] at whose instance it was performed, and that the service was for the benefit of the latter company, which paid for the service, to defend it from liability for its own wrong." *Id.* Boehmke "naturally mistook" ABC for the owner and operator of the railway. *Id.* at 163. The mistake became a "mere *irregularity* in the judicial formulary of the suit when the real party came to the defense wearing the mask of the formal party." (Emphasis sic.) *Id.* at 164. The trial court correctly substituted the "nominal defendant" for NOT, whose "own attorneys appeared and made the defense for it in fact, though *ostensibly* for the company which was sued by mistake and whose legal personality, franchises, assets, and obligations it had absorbed." (Emphasis sic.) *Id.* at 163. The Supreme Court concluded:

> Where one knows himself to be the wrongdoer sought to be made liable in an action of damages for the wrong, and voluntarily appears by his attorney and answers in the name of and ostensibly as another person who was by the plaintiff named as defendant, and served with process in the mistaken belief that the latter person did the wrong, the former person thereby submits himself to the jurisdiction of the court and may be substituted as the real defendant in place of the nominal defendant sued by mistake; and the substituted defendant will be bound by the verdict and judgment rendered against him in the case.

*Id.* at syllabus.

{¶ 30} *Boehmke* has no application in this case. *Boehmke* involved a substitution of parties. Here, Benchmark initially sought to substitute Southgate with SSC and Albany but later switched gears and asked the trial court to make SSC and Albany parties in addition to Southgate. Unlike the plaintiff in *Boehmke*, Benchmark does not claim it mistakenly named the wrong defendant when it filed its original complaint. Instead, Benchmark's mistake was not naming more defendants than it originally did.

{¶ 31} Moreover, in *Boehmke*, NOT had a clear interest in defending the lawsuit against ABC because any judgment against ABC would have become NOT's obligation due to the merger. NOT also admitted its attorneys defended the case under ABC's name. Here, the record contains no such admission. Additionally, the record reveals no clear interest SSC and Albany had in defending a lawsuit against Southgate even if the entities shared an address and personnel. There is no evidence a judgment against Southgate would have become the obligation of SSC and Albany. After trial, even Benchmark admitted the relationship between Southgate, SSC, and Albany remained "confusing to say the least." (R. 141, 5.)

{¶ 32} Admittedly, Southgate's breach of contract counterclaim and complaints about Benchmark's workmanship and failure to honor warranties were inconsistent with Southgate's position that it did not have a contract with Benchmark. However, this inconsistency does not prove SSC and Albany directed Southgate's defense behind the scenes. Given Benchmark's position that Southgate was a party to the March 2009 contract and the trial court's agreement, Southgate acted prudently in making efforts to demonstrate Benchmark did not fulfill the terms of the contract. Therefore, the trial court erred when it found SSC and Albany voluntarily appeared in the proceedings below in the name of Southgate.

{¶ 33} Benchmark also maintains it provided SSC and Albany with sufficient service of process when it served Southgate with the original complaint and summons at 2900. Benchmark argues Dr. Lake portrayed himself as the sole point of contact on the roofing contract and its representatives met with him at 2900 several times. Thus, service at 2900 was reasonably calculated to reach Dr. Lake and apprise "any interested party of the pendency of the action." (Appellee's brief, 27.) Benchmark made similar arguments during the proceedings below, but the trial court did not address them, likely because it was unnecessary given the court's voluntary appearance finding.

{¶ 34} Benchmark's arguments do not present us with a basis to uphold the judgment against SSC and Albany. Benchmark never served SSC and Albany. Benchmark served *Southgate* with notice of the pendency of an action against *Southgate*. When Benchmark served Southgate, no action against SSC and Albany existed. Even if SSC and Albany knew about the action against Southgate and anticipated being drawn into it, such knowledge would not substitute for service after SSC and Albany were formally added as

defendants nearly three years after service on Southgate. Likewise, even if SSC and Albany learned the court added them as parties before the court rendered judgment against them, such knowledge would also not substitute for service of process. *See Maryhew* at 157, citing *Haley v. Hanna*, 93 Ohio St. 49 (1915) ("Inaction upon the part of a defendant who is not served with process, even though he might be aware of the filing of the action, does not dispense with the necessity of service.").

{¶ 35} Benchmark failed to make effective service of process on SSC and Albany, and SSC and Albany did not voluntarily appear in the action below or waive service. Therefore, the trial court lacked personal jurisdiction over SSC and Albany and the judgment against them is void. Accordingly, we sustain SSC and Albany's second assignment of error and remand for the trial court to vacate the void judgment against them. Our decision does not preclude Benchmark from pursuing an action against SSC and Albany that comports with jurisdictional requirements. Also, this decision renders moot SSC and Albany's first and third assignments of error, so we need not address them. *See* App.R. 12(A)(1)(c).

B. *Southgate*

{¶ 36} Under its first assignment of error, Southgate contends the trial court erred when it found Southgate was a party to the March 2009 contract and thus could be liable for breach of contract and in an action on an account.

{¶ 37} " ' "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." ' " *Coffman v. Ohio State Adult Parole Auth.*, 10th Dist. No. 12AP-267, 2013-Ohio-109, ¶ 9, quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976).

{¶ 38} "An account is an 'unsettled claim or demand by one person against another, based upon a transaction creating a debtor and creditor relation[ship] between the parties.' " *Gray Printing Co. v. Blushing Brides, L.L.C.*, 10th Dist. No. 05AP-646, 2006-Ohio-1656, ¶ 21, quoting *Am. Sec. Serv., Inc. v. Baumann*, 32 Ohio App.2d 237, 242 (10th Dist.1972). " '[T]he cause of action exists only as to the balance that may be due one of the parties as a result of the series of transactions.' " *Id.* "An action on an account is

'founded upon contract' and constitutes a breach of contract claim." *Id.*, quoting *Oxford Sys. Integration, Inc. v. Smith-Boughan Mechanical Servs.*, 159 Ohio App.3d 533, 2005-Ohio-210, ¶ 16 (2d Dist.).

{¶ 39} Here, Southgate and Benchmark agree a contract exists—the document Dr. Lake purportedly signed in March 2009. However, they disagree over whether Southgate is a party to that contract. The trial court made the following conclusions of law:

> In Ohio, parol evidence directed to the nature of a contractual relationship is admissible where the contract is ambiguous and the evidence is consistent with the written agreement which forms the basis of the action between the parties. *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St. 3d 512, 520.
>
> It is axiomatic that, where a contract is ambiguous, parol evidence may be employed to resolve the ambiguity and ascertain the intention of the parties. *Id* at 521.
>
> Here, the contract is ambiguous as to who the proper building owner is and who the proper parties to the contract are.
>
> Parol evidence, in the form of admissions, signatures, testimony about course of dealings, and the insurance policy, establishes that Southgate Management, LLC is also a party to the contract at issue.

(R. 147, 16.)

{¶ 40} Generally, contract interpretation presents a question of law we review de novo. *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, ¶ 38, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995). Thus, we review the issue of whether a contract contains an ambiguity de novo. *N. Coast Premier Soccer, L.L.C. v. Ohio Dept. of Transp.*, 10th Dist. No. 12AP-589, 2013-Ohio-1677, ¶ 13, quoting *Sauer v. Crews*, 10th Dist. No. 12AP-320, 2012-Ohio-6257, ¶ 11. " 'Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation.' " *Beard v. New York Life Ins. & Annuity Corp.*, 10th Dist. No. 12AP-977, 2013-Ohio-3700, ¶ 22, quoting *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, ¶ 16.

{¶ 41} If a contract is not ambiguous, it must be enforced as written. *KeyBank Natl. Assn. v. Columbus Campus, L.L.C.*, 10th Dist. No. 11AP-920, 2013-Ohio-1243, ¶ 27.

"Conversely, if a contract is ambiguous, the *meaning* of the words is a factual question and a court's interpretation will not be overturned absent an abuse of discretion." (Emphasis sic.) *Stoll v. United Magazine Co.*, 10th Dist. No. 03AP-752, 2004-Ohio-2523, ¶ 7, citing *Fleming v. Rusch Properties*, 10th Dist. No. 00AP-595 (Mar. 1, 2001). The phrase abuse of discretion implies the court had an unreasonable, arbitrary or unconscionable attitude. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 42} Under the parol evidence rule, " 'a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing.' " *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, ¶ 7, quoting *Black's Law Dictionary* 1149 (8th Ed.2004). However, parol evidence is admissible to interpret the express contractual language when an ambiguity exists. *Hikmet v. Turkoglu*, 10th Dist. No. 08AP-1021, 2009-Ohio-6477, ¶ 37, citing *Yoder v. Thorpe,* 10th Dist. No. 07AP-225, 2007-Ohio-5866.

{¶ 43} Here, Dr. Lake apparently signed the March 2009 contract in his own name with the title of manager. It is unclear whether at the time he signed, the contract still listed Dr. Lake as the owner of 2900-2912-2920 or whether it listed SSC and Albany. As Southgate points out, its name appears nowhere on the contract. Thus, the ambiguity that exists on the face of the contract is as to whether Dr. Lake, SSC, and/or Albany is a party to the contract. The express contractual language is not reasonably susceptible to an interpretation that Southgate is a party to the March 2009 contract.

{¶ 44} Even if the contract contained an ambiguity regarding Southgate's status as a party, the evidence adduced at trial did not clarify Southgate's role in the formation of the contract. There is no question Southgate participated in the 2920 roofing project. Southgate was a named insured on the Nationwide policy. Southgate received insurance proceeds on the policy, got invoices from Benchmark, and paid the deposit for the project through Dr. Lake, who signed Southgate's check as a manager. Benchmark presented evidence of Dr. Lake's heavy involvement with the project, including evidence he signed the contract. Dr. Lake presumably had some relationship with SSC and Albany, but we do not know if he was an agent or subagent for Southgate, SSC, and/or Albany. Dr. Lake and Mike Black, the two people who evidently formed the contract, did not testify. The record is devoid of evidence about what Dr. Lake represented to Black regarding Dr. Lake's

relationship with SSC, Southgate, and Albany and the capacity in which he signed the contract.

{¶ 45} We acknowledge the trial court concluded "[t]he admissions made in Southgate's Counterclaim amount to judicial admissions" and were evidence Southgate entered into a contract with Benchmark, Benchmark completed the work, and Southgate "decided not to pay the balance owed under that contract." (R. 147, 15.)  The trial court found "[n]o further evidence is required to prove that Southgate * * * is a party to the contract," and "Southgate's withdrawal of its counterclaim at the conclusion of trial does not invalidate the admissions contained in the counterclaim."  (R. 147, 15.)

{¶ 46} "A judicial admission is a distinct and unequivocal statement, made by a party or a party's counsel during a judicial proceeding, which acts as a substitute for evidence at trial."  *In re Regency Village Certificate of Need Application*, 10th Dist. No. 11AP-41, 2011-Ohio-5059, ¶ 32, citing *Haney v. Law,* 1st Dist. No. C-070313, 2008-Ohio-1843, ¶ 7. "To operate as a judicial admission, an allegation in a pleading must be an allegation of a material and competent fact and not a mere statement of a legal conclusion." *Faxon Hills Constr. Co. v. United Bhd. of Carpenters & Joiners of Am.*, 168 Ohio St. 8 (1958), paragraph one of the syllabus.  If a pleading is withdrawn, stricken or superseded by amendment, the pleader " 'is no longer concluded by it, and statements therein cease to be judicial admissions.' "  *Gest v. Piketon Lanes, Inc.*, 5 Ohio App.2d 1, 5 (10th Dist.1965), quoting 31A Corpus Juris Secundum, Evidence, Section 304, at 783. However, the statements in the former pleading " 'still remain as statements seriously made and are admissible in evidence, on behalf of the opposite party, as admissions by the pleader, where the pleader is a party to the subsequent litigation, where the statements are material and relevant to the issues in connection with which they are sought to be introduced, and where, in the event of a pleading withdrawn by leave of court, no order is made relieving the pleader from the admissions made.' " *Id*; *Williams v. Williams*, 12th Dist. No. CA2012-08-074, 2013-Ohio-3318, ¶ 16 ("[A] trial court may permit a party to amend a pleading pursuant to Civ.R. 15 even though the statements in the pleadings could constitute judicial admissions if the pleading was not amended. However, both the original pleading and the amended pleading may be used as evidence in determining the disputed fact.").

{¶ 47} Even if the statements in Southgate's breach of contract/warranty counterclaim constituted judicial admissions, Southgate later withdrew that counterclaim. Therefore, the statements in it ceased to be judicial admissions, but Benchmark could potentially still use the statements as evidence against Southgate. However, that does not change the fact that the contract contained no ambiguity for the trial court to interpret regarding Southgate's status as a party. Additionally, while Southgate's counterclaim indicated it hired and had an agreement with Benchmark, Southgate did not specify the terms of the contract at issue. Like Benchmark, Southgate failed to attach a copy of any written contract to its pleading.

{¶ 48} Benchmark also contends that, even if Southgate is not a party to the contract, it was an "agent acting for an undisclosed or partially disclosed principal, so it would be jointly and severally liable on any contracts." (Appellee's brief, 14.) Benchmark argues "[a]t the very least, an implied contract existed between Benchmark and Southgate" because "there is no dispute that the work was performed." (Appellee's brief, 14.) However, the trial court did not address the existence of an agency relationship or an implied contract. Further, a plaintiff cannot change the theory of its case and present new arguments for the first time on appeal. *Barker v. Century Ins. Group*, 10th Dist. No. 06AP-377, 2007-Ohio-2729, ¶ 30, citing *Wynn v. Taylor-Dunn Mfg.*, 10th Dist. No. 02AP-1445, 2003-Ohio-6472, ¶ 12.

{¶ 49} Even if we were to address Benchmark's agency theory, it is unclear what relationship exists between Southgate, Albany and SSC. Additionally, as previously explained, the record is devoid of evidence of what Dr. Lake represented to Black regarding Dr. Lake's relationship with SSC, Southgate, and Albany and the capacity in which he signed the contract. Moreover, an express agreement, i.e., the March 2009 contract, already exists regarding the roof work at 2920. Benchmark just failed to prove Southgate was a party to that contract. It is " 'generally agreed that there [cannot] be an express agreement and an implied contract for the same thing existing at the same time.' " *Barker* at ¶ 29, quoting *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335 (1954).

{¶ 50} In sum, it was unreasonable for the trial court to resolve the ambiguity in the March 2009 contract by finding Southgate was a party to the contract. The face of the contract is not reasonably susceptible to that conclusion. Moreover, Benchmark failed to produce evidence that would permit the court to determine what role, if any, Southgate

had in the contract's formation.  The trial court erred when it found Southgate was a party to the March 2009 contract and that Benchmark was entitled to a judgment against Southgate for breach of contract and in an action on an account.

{¶ 51} For the foregoing reasons, we sustain Southgate's first assignment of error. This decision renders moot Southgate's second, third, fourth, and fifth assignments of error. *See* App.R. 12(A)(1).

## IV. CONCLUSION

{¶ 52} In sum, we sustain Southgate's first assignment of error and SSC and Albany's second assignment of error.  The remaining assignments of error are rendered moot.  We reverse the judgment of the Franklin County Court of Common Pleas and remand for further proceedings consistent with this decision.

*Judgment reversed and*
*cause remanded.*

SADLER, P.J., and DORRIAN, J., concur.