[Cite as *Ettayem v. Safaryan*, 2014-Ohio-4170.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ashraf A. Ettayem,<br>aka Joe Ettayem, | : | |
| | : | |
| Plaintiff-Appellant, | | No. 13AP-988 |
| | : | (C.P.C. No. 11CV-07124) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Tigran R. Safaryan,<br>aka Ty Safaryan, | : | |
| | | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 23, 2014

*Ashraf A. Ettayem*, pro se.

*Terry K. Sherman*; *Irving B. Marks*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Ashraf A. Ettayem, aka Joe Ettayem, pro se, appeals from a judgment entry of the Franklin County Court of Common Pleas entering a verdict, pursuant to a jury trial, in favor of defendant-appellant, Tigran R. Safaryan, aka Ty Safaryan. Because the trial court did not abuse its discretion in making evidentiary rulings or in instructing the jury, and because the verdict is not against the manifest weight of the evidence, we affirm.

**I. Facts and Procedural History**

{¶ 2}   On June 9, 2011, appellant filed a pro se complaint against appellee asserting claims of assault and battery.  Appellee answered, asserting several affirmative defenses including self-defense and reasonable force to eject a trespasser.  Appellee also filed a counterclaim asserting claims for assault, intentional infliction of emotional distress, and interference with contract.   After answering appellee's counterclaim, appellant retained counsel to represent him.

{¶ 3}   The case proceeded to a jury trial before a magistrate.  On October 7, 2013, the first day of trial and prior to jury selection, appellee moved to dismiss his counterclaim.  At appellant's request, the trial court dismissed the counterclaim with prejudice, and the trial proceeded on appellant's complaint for assault and battery.

{¶ 4}   According to the evidence at trial, appellee owns a corporation that is the title owner of the commercial property located at 2950 and 2960 Groveport Road, Columbus, Ohio.  In 2006, appellant opened a retail store known as Shop-N-Save at 2950 Groveport Road.

{¶ 5}   Appellant was once a shareholder in appellee's corporation.  However, in January 2010, following a disagreement between appellant and appellee, the parties agreed that appellee would purchase all of appellant's shares in the corporation and, going forward, appellant would solely be a tenant of the premises located at 2950 Groveport Road where appellant would continue to operate his Shop-N-Save store.  The parties executed a new lease agreement in January 2010 stating appellant would reduce his occupancy from 12,000 square feet to 7,500 square feet and would vacate the portion of the building now known as 2960 Groveport Road.  The parties agreed that appellee would relocate a non-loadbearing wall six feet to the north to separate the 2950 and 2960 spaces. Appellant had been storing materials, equipment, and other personal belongings at the 2960 premises but the January 2010 lease agreement provided that appellant would remove all such items from the 2960 premises as that space would be leased to a new tenant.

{¶ 6}   Appellant testified that, on June 9, 2010, he went to work at the Shop-N-Save and observed appellee's contractor, Ruslan Dyussemaliyev, next door working on the 2960 Groveport Road space.  He noticed Dyussemaliyev and his construction crew were

working to close the opening in the wall that separated the 2950 and 2960 spaces so there would no longer be any interior connection between the two spaces. Appellant testified he told Dyussemaliyev the opening could not be closed because there was still other major work to be done and that the opening in the wall was the main emergency exit. A short time later, appellee arrived at the premises. Appellant testified that appellee came into his store "screaming and yelling and outrageous." (Tr. Vol. III, 330.) Appellant stated he had customers in the store so he asked appellee to "calm down," and told him he would talk to him outside of the store. (Tr. Vol. III, 331, 337.)

{¶ 7} Appellant testified that when he walked next door to the entrance of the 2960 property, appellee was standing just inside the double doors of the 2960 space. Appellant testified the two had a heated conversation about the quality of the construction work being performed and appellant's reasons why it was not proper to close the opening in the wall yet. That discussion led appellant to call police to assist him in a "landlord dispute." (Tr. Vol. III, 338.) Appellant said he hung up the phone and told appellee, "I'm sorry that you have led me that – to cause me to make a phone call to the police for this issue." (Tr. Vol. III, 340.) According to appellant, as soon as he finished that sentence, he "saw that closed fist immediately lunge to [his] mouth," and appellee punched him in the face. (Tr. Vol. III, 340.) Appellant denied ever pushing appellee, lunging at him, rearing back to punch appellee, or taking a swing at him. Appellant testified he again called police and waited for help to arrive. Appellant stated he sustained injuries to his mouth and face, including two teeth that were knocked out.

{¶ 8} John Schilling, a contractor who occasionally performed work for appellant, was at the property at 2950 Groveport Road on June 9, 2010. He testified he witnessed appellant and appellee arguing inside the property, and then appellee storm out the door. Schilling stated he left the building a few minutes later and saw appellant walking toward the property at 2960 Groveport Road. From where his car was parked 20 or 30 feet away, Schilling testified all he saw was "an arm come out and hit [appellant]." (Tr. Vol. I, 69.) Schilling did not see appellant swing his arm at anyone, push anyone, or rear his arm back as if he was going to hit anyone.

{¶ 9} Appellee's testimony at trial told a different version of events on June 9, 2010. Appellee testified that he called appellant "many times" in the months prior to June

2010 to inform appellant he needed to remove all of his belongings from the 2960 Groveport Road property but appellant never removed his belongings from the space. By June 9, 2010, appellee's contractor, Dyussemaliyev, had nearly completed construction on the new wall intended to separate the property and appellant still had not removed his belongings from the 2960 Groveport Road space. Appellee testified he received a phone call from his contractor telling him appellant was on the premises "yelling and screaming, taking tools out of [the construction workers'] hands," and that his contractor did not want to do anything more until appellee arrived to handle the situation. (Tr. Vol. II, 120.) Appellee's contractor also told him appellant was threatening the workers and would not let them continue their work. Dyussemaliyev confirmed this conversation in his testimony and stated he told appellee he "was scared [appellant's] going to get violent." (Tr. Vol. II, 217, 253.)

{¶ 10} Following the phone call from his contractor, appellee testified he arrived at the property and told appellant he was no longer allowed to enter the 2960 Groveport Road property. Appellee instructed the workers to close the wall, which prior to that time had an opening in it creating passage between the 2950 and 2960 spaces, and informed appellant that if he wanted to retrieve his belongings he could go through the front doors of the 2960 Groveport Road property. At that point, appellee testified appellant attempted to come back through the double doors, stating appellant was "coming and yelling at me." (Tr. Vol. II, 128.) Appellee told appellant to get out, reminding him that he had already told him he was not allowed to be in the 2960 space. Both men then pushed each other. After they exchanged shoves, appellee testified appellant reared back, brought his closed fist back, and swung at appellee. In response, appellee testified he "hit [appellant] once, back off, tell [appellant] get out," and then appellee called the police. (Tr. Vol. II, 133.)

{¶ 11} Several other witnesses also testified they witnessed the initial verbal argument between the parties at the 2950 Groveport Road property. Following deliberations, the jury returned a verdict in favor of appellee. Pursuant to the jury interrogatories, the jury found appellant had proved by a preponderance of the evidence that appellee had committed an assault and battery against him. However, the jury further found appellee had proved by a preponderance of the evidence the affirmative

defenses of self-defense and reasonable force to eject a trespasser. The trial court journalized the verdict in an October 22, 2013 judgment entry. Appellant timely appeals.

## II. Assignments of Error

{¶ 12} Appellant assigns four assignments of error for our review:

> [I.] THE TRIAL COURT ERRED IN EXCLUDING EXHIBITS 11 THRU 23, EXHIBITS 30 & 31.

> [II.] THE TRIAL COURT ERRED IN NOT ALLOWING [APPELLANT] THE USE OF STATEMENTS IN [APPELLEE'S] DISMISSED COUNTERCLAIM.

> [III.] THE TRIAL COURT ERRED WHEN IT DID NOT CONSIDER [APPELLANT'S] PROPOSED JURY INSTRUCTIONS AND, OR MODIFY THE INSTRUCTIONS GIVEN TO THE JURY.

> [IV.] [THE] JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. First and Second Assignments of Error – Evidentiary Rulings

{¶ 13} In his first assignment of error, appellant asserts the trial court erred in excluding certain proffered exhibits from evidence. In his second assignment of error, appellant asserts the trial court erred in excluding from evidence certain statements contained in appellee's dismissed counterclaim. Because both of these assignments of error concern evidentiary rulings of the trial court, we address them jointly.

{¶ 14} A trial court has broad discretion over the admission or exclusion of evidence, and a reviewing court generally will not reverse an evidentiary ruling absent an abuse of discretion that materially prejudices the affected party. *Andrew v. Power Marketing Direct, Inc.*, 10th Dist. No. 11AP-603, 2012-Ohio-4371, ¶ 73, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001); *State v. Barnes*, 94 Ohio St.3d 21, 23 (2002) (noting a trial court abuses its discretion when it acts "unreasonably, arbitrarily, or unconscionably").

## A. Exhibits 11 through 23

{¶ 15} Appellant first argues the trial court erred when it excluded from evidence exhibits 11 through 23. Appellant proffered all of these exhibits as evidence of prior

inconsistent statements made by appellee. All of the documents contained in exhibits 11 through 23 purported to contain prior statements by appellee in various deeds and mortgages in which appellee stated he was not married. At trial, appellee testified he was married in the United States in 1998. Appellee's counsel objected that the line of questioning was not relevant, and the magistrate sustained the objection and excluded the various deeds and mortgages that appellant sought to introduce as extrinsic evidence of a prior inconsistent statement. According to appellant, the trial court erred in excluding these exhibits from evidence because he was entitled to use the prior inconsistent statements to impeach appellee's credibility.

{¶ 16} Evid.R. 613(B) states as follows:

> Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
>
> (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
>
> (2) The subject matter of the statement is one of the following:
>
> (a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
>
> (b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);
>
> (c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

{¶ 17} Thus, pursuant to Evid.R. 613(B), a party may introduce extrinsic evidence of a witness' prior inconsistent statement in order to impeach the witness' credibility only if the subject matter of the witness' alleged inconsistent statements concerned one of the grounds stated in Evid.R. 613(B)(2). *State v. Kulasa*, 10th Dist. No. 11AP-826, 2012-Ohio-6021, ¶ 12. Here, none of appellee's prior statements which appellant attempted to introduce into evidence falls into a category listed in Evid.R. 613(B)(2).

{¶ 18} Evid.R. 613(B)(2)(a) allows admission of extrinsic evidence of a prior inconsistent statement where the subject matter is a "fact that is of consequence to the determination of the action other than the credibility of a witness." All of the documents appellant sought to admit in proffered exhibits 11 through 23 purported to establish that appellee lied about his marital status. Appellee's marital status has no relation to appellant's claims of assault and battery. Thus, because appellee's marital status was not a fact of consequence, the documents did not fall under Evid.R. 613(B)(2)(a).

{¶ 19} Next, Evid.R. 613(B)(2)(b) lists specific categories for which extrinsic evidence is allowed. Evid.R. 608(A) allows for evidence of a witness' credibility only "after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise"; Evid.R. 609 allows for evidence of conviction of a crime; Evid.R. 616(A) allows for evidence of bias, prejudice, interest or motive to misrepresent; and Evid.R. 616(B) allows for evidence of sensory or mental defects that impair capacity, ability, or opportunity to remember. Appellant did not purport to introduce the extrinsic evidence under any of these categories, and none of these categories are applicable here.

{¶ 20} Finally, Evid.R. 613(B)(2)(c) allows the admission of extrinsic evidence under the common law of impeachment. Appellant made no argument at the trial court that exhibits 11 through 23 fell under the common law of impeachment nor does he make any such argument on appeal. The record is clear appellant sought to introduce the documents contained in exhibits 11 through 23 solely to impeach the general credibility of appellee as a witness. Because the prior inconsistent statements do not fall within any of the categories listed in Evid.R. 613(B)(2), the trial court did not abuse its discretion in excluding these exhibits from admission into evidence.

**B. Exhibits 30 and 31**

{¶ 21} Appellant further argues the trial court erred when it did not allow admission into evidence of exhibits 30 and 31. Columbus City Inspector Michael Walter identified exhibits 30 and 31 as orders of building code violations for the property at 2950 Groveport Road issued June 10, 2010, the day after the altercation between appellant and appellee. Walter testified about the contents of the violations, but the trial court did not allow exhibits 30 and 31 to be admitted into evidence. Appellant asserts the exclusion from evidence of these exhibits was highly prejudicial.

{¶ 22} Generally, "[a]n evidentiary ruling by a trial court may not be the basis of a claim of error unless the person claiming that error can establish that a substantial right has been affected." *Lips v. Univ. of Cincinnati College of Medicine*, 10th Dist. No. 12AP-374, 2013-Ohio-1205, ¶ 49, citing Evid.R. 103. To show that an evidentiary ruling has affected a substantial right, the party must demonstrate that the alleged error impacted the final determination of the case. *Id.*, citing *Campbell v. Johnson*, 87 Ohio App.3d 543, 551 (2d Dist.1993.)

{¶ 23} Appellant argues exhibits 30 and 31 would have aided the jury in visualizing the ongoing construction on the property and would have helped establish "who the true party at fault creating the situation giving rise to battery and assault." (Emphasis omitted.) (Appellant's Reply Brief, 6.) Appellant does not articulate how this alleged error affected the outcome of the trial. Although the documents contained in exhibits 30 and 31 related to issues with the property, the building code violations do not relate to the issue of the alleged assault and battery. Additionally, to the extent the contents of those documents were relevant, Walter testified in detail about the information contained therein, so the jury had the same information to consider despite the exclusion of these exhibits. *See* Evid.R. 403(B) (stating that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence"). We agree with appellee that any alleged error related to the exclusion of exhibits 30 and 31 did not affect appellant's substantial rights. Accordingly, we conclude the trial court did not abuse its discretion in excluding from evidence exhibits 30 and 31.

**C. Statements from Counterclaim**

{¶ 24} Appellant additionally argues the trial court erred in excluding from evidence statements from appellee's dismissed counterclaim. On the first day of trial, prior to jury selection, appellee moved to dismiss his counterclaim. At appellant's request, the trial court dismissed appellee's counterclaim with prejudice. When appellee testified at trial, appellant's counsel attempted to ask him about statements appellee had made in his dismissed counterclaim, but appellee's counsel objected before appellant's counsel could ask the question and the trial court sustained the objection. Appellant's counsel argued that, because appellee testified he believed appellant only initiated the

lawsuit "for the money," the jury should be able to hear that appellee also "did the same thing," meaning before he dismissed his counterclaim, appellee also sought money from appellant. The trial court would not allow the statements from the counterclaim, concluding they were not relevant.

{¶ 25} In general, statements or allegations in a pleading can operate as judicial admissions. *See Benchmark Contrs., Inc. v. Southgate Mgt., L.L.C.*, 10th Dist. No. 13AP-390, 2014-Ohio-1254, ¶ 46. However, when a pleading is withdrawn, stricken, or superseded by amendment, the pleader is no longer bound by it, and those statements no longer constitute judicial admissions. *Id.*, citing *Gest v. Piketon Lanes, Inc.*, 5 Ohio App.2d 1, 5 (10th Dist.1965). Nevertheless, the statements contained in those former pleadings can still be admissible evidence on behalf of the opposing party where the pleader is a party to the litigation, the statements are material and relevant to the issues for which their introduction is sought, and where no order is made relieving the pleader from the admissions made. *Id.*, citing *Gest* at 5.

{¶ 26} Appellant does not clearly articulate the relevance or probative value of the statements contained in the dismissed counterclaim. From what we can discern from his brief, appellant would have used those statements as evidence that appellee was not acting in self-defense and instead only sought monetary damages from appellant. This argument is tentative at best, and we, like the trial court, fail to see how the statements in the counterclaim are either material or relevant once they have been dismissed with prejudice at appellant's request.

{¶ 27} The trial court was under no obligation to allow statements from the dismissed counterclaim where those statements were not relevant to the issue at hand and the counterclaim had been dismissed with prejudice. *Benchmark Contrs.* at ¶ 46. Thus, the trial court did not abuse its discretion when it determined the statements from the dismissed counterclaim were not relevant. *See, e.g.*, *Foxfire Village Condominium Unit Owners' Assn. v. Meyer*, 10th Dist. No. 13AP-986, 2014-Ohio-3339, ¶ 24 (finding trial court acted within its discretion when it "exclude[d] from evidence the statements in [the party's] pleadings and memorandum contra" where the party made no effort in those documents to separate fact from argument and the court had previously stricken statements from the party's counterclaim).

{¶ 28} Because we conclude the trial court did not abuse its discretion in its evidentiary rulings related to the admission of exhibits and of statements from appellee's dismissed counterclaim, we overrule appellant's first and second assignments of error.

**IV. Third Assignment of Error – Jury Instructions**

{¶ 29} In his third assignment of error, appellant argues the trial court erred when it either did not consider his proposed jury instructions or did not modify the jury instructions given at trial.

{¶ 30} As a threshold matter, appellee argues appellant failed to object to the jury instructions in the trial court and has thus waived any alleged error in the jury instructions on appeal. Pursuant to Civ.R. 51(A), "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." *See also Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207 (1982), paragraph one of the syllabus.

{¶ 31} There is, however, an exception to the waiver rule that may excuse a failure to timely object. *Kendig v. Martin*, 10th Dist. No. 02AP-408, 2003-Ohio-1525, ¶ 29. " 'Where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and that the complaining party has unsuccessfully requested the inclusion of that law in the trial court's charge to the jury, such party does not waive his objections to the court's charge by failing to formally object thereto.' " *Id.*, quoting *Presley v. Norwood*, 36 Ohio St.2d 29 (1973), paragraph one of the syllabus. The trial transcript indicates appellant requested a change to the prior jury charge, and appellant's proposed jury instructions differed slightly from the instructions given at trial. Thus, for purposes of our analysis, we assume appellant preserved his objection.

{¶ 32} "Ordinarily, a trial court should give requested jury instructions if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusions sought by the instruction." *Ball v. Stark*, 10th Dist. No. 11AP-177, 2013-Ohio-106, ¶ 23, citing *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991). The evidence presented in the case must support the jury instructions given as " '[i]t is well established that the trial court will not instruct the jury where there is no

evidence to support an issue.' " *Id.*, quoting *Murphy* at 591.  Additionally, a trial court may refuse to give a jury instruction that is redundant.  *Id.*, citing *Bostic v. Connor*, 37 Ohio St.3d 144 (1988), paragraph two of the syllabus.

{¶ 33} An appellate court considers the jury charge as a whole to determine whether the charge misled the jury in a manner that affected the appealing party's substantial rights.  *Ball* at ¶ 24, citing *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93 (1995), and *Columbus Steel Castings Co. v. Alliance Castings Co., L.L.C.*, 10th Dist. No. 11AP-351, 2011-Ohio-6826, ¶ 15.  The trial court has the discretion to decide to give or refuse a particular instruction, and an appellate court will not disturb that decision absent an abuse of discretion.  *Columbus Steel Castings Co.* at ¶ 15; *Eastman v. Stanley Works*, 180 Ohio App.3d 844, 2009-Ohio-634, ¶ 49 (10th Dist.).

{¶ 34} In charging the jury, the trial court explained that appellant claimed appellee assaulted him and committed battery against him.  Appellee claimed he acted in self-defense and used reasonable force to eject appellant from trespassing on his property.  After defining assault and battery, the trial court explained the concept of self-defense as follows:

> The Defendant asserts that he acted in self-defense.  To establish that the Defendant was justified in using force, not likely to cause death or great bodily harm, the Defendant must prove by a preponderance of the evidence that he was not at fault in creating the situation giving rise to the alleged assault upon the Plaintiff, and that he had reasonable grounds to believe, and an honest belief, even if mistaken, that he was in imminent danger of physical harm.
>
> Physical harm to persons is defined as any injury, illness or other physiological impairment, regardless of its gravity or duration.
>
> In deciding whether the Defendant had reasonable grounds to believe and an honest belief that he was in immediate danger of physical harm, you must put yourself in the position of the Defendant, with his characteristics, his knowledge or lack of knowledge; and, under the circumstances and conditions that surrounded him at the time, you must consider the conduct of the Plaintiff, and decide whether the Plaintiff's acts and words caused the Defendant to reasonably and honestly believe that

he was about to receive bodily harm.  When less than deadly
force is used, the Defendant has no duty to retreat.

(Tr. Vol. IV, 532-33.)

{¶ 35} The trial court then instructed the jury as to appellee's separate affirmative defense of ejecting a trespasser by the use of reasonable force:

A property owner may eject a trespasser by the use of
reasonable force under the circumstances, after the trespasser
has received notice to depart and fails to do so within a
reasonable time.

The Defendant claims that he used reasonable force to eject
the Plaintiff, whom the Defendant asserts trespassed on the
Defendant's property.

To establish this affirmative defense, the Defendant must
prove by a preponderance of the evidence that the Plaintiff
did, in fact, enter or stay upon the Defendant's property
without the Defendant's permission.

(Tr. Vol. IV, 533-34.)

{¶ 36} Appellant seems to assert the trial court should have instructed the jury that appellee had a duty to retreat and that the trial court's instructions as to reasonable force were confusing.

{¶ 37} However, as we previously stated, a trial court has no obligation to give an instruction that does not correctly state the law or that is not supported by the evidence. *Ball* at ¶ 23.  Because appellee used less than deadly force, he had no duty to retreat.  *See*, *e.g.*, *State v. Vu*, 10th Dist. No. 09AP-606, 2010-Ohio-4019, ¶ 11 (noting "the non-deadly force instruction does not carry, in any circumstance, a duty to retreat").  Thus, to instruct the jury otherwise would have been a misstatement of the applicable law.

{¶ 38} To the extent appellant argues the instructions as to reasonable force were confusing, we disagree.  Though appellant may be arguing it was error for the trial court to fail to include a specific definition of reasonable force, appellant did not request a more specific definition either in his proposed jury instructions or in his objection to the trial court.  We have considered the charge as a whole and have determined the instructions were clear and an accurate statement of the applicable law. Nothing in the jury

instructions would have misled the jury in a manner that could have affected any of appellant's substantial rights. *See Kendig* at ¶ 31, citing *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 410 (9th Dist.1993) (stating "misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party"). Accordingly, the trial court did not abuse its discretion in its decision regarding the language used in the jury charge. We overrule appellant's third assignment of error.

## V. Fourth Assignment of Error – Manifest Weight of the Evidence

{¶ 39} In his fourth and final assignment of error, appellant argues the judgment of the trial court is against the manifest weight of the evidence.

{¶ 40} In order to prevail on a claim for assault, a plaintiff must prove by a preponderance of the evidence that the defendant willfully threatened or attempted to harm or touch the plaintiff offensively in a manner that reasonably placed the plaintiff in fear of the contact. *Miller v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-12, 2012-Ohio-3382, ¶ 11, citing *Stafford v. Columbus Bonding Ctr.*, 177 Ohio App.3d 799, 2008-Ohio-3948, ¶ 17 (10th Dist.). To prevail on a claim for battery, the plaintiff must prove that the intentional contact by the defendant was harmful or offensive. *Id.*, citing *Stafford* at ¶ 17. In a civil action for assault and battery, Ohio courts have held that the defendant has the burden of proving a defense of justification, such as self-defense. *Id.*, citing *White v. Amon*, 7th Dist. No. 79 C.A. 48 (Mar. 25, 1980).

{¶ 41} In civil cases, a reviewing court will not reverse the judgment as being against the manifest weight of the evidence if some competent, credible evidence supports all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978). In determining whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trial court are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*

{¶ 42} Appellant argues the verdict was against the manifest weight of the evidence because appellee did not meet his burden of proving the affirmative defenses of self-defense or reasonable force used to eject a trespasser. The jury interrogatories indicate the jury found appellee proved both of these affirmative defenses by a preponderance of the evidence.

{¶ 43} To prevail on the affirmative defense of self-defense where non-deadly force is used, appellee had to prove by a preponderance of the evidence that (1) he was not at fault in creating the situation or giving rise to the affray, (2) he had a bona fide belief, even if mistaken, that he was in imminent danger of any bodily harm, and (3) he used only reasonable force under the circumstances. *Huskins v. Huskins*, 7th Dist. No. 10 CO 22, 2011-Ohio-1008, ¶ 30, citing *Struthers v. Williams*, 7th Dist. No. 07 MA 55, 2008-Ohio-6637, ¶ 15-17. As we have previously noted, unlike deadly force cases, there is no duty to retreat before using non-deadly force in self-defense. *Id.*, citing *Williams* at ¶ 16; *Vu* at ¶ 11.

{¶ 44} Here, appellee testified that he told appellant multiple times not to enter the premises at 2960 Groveport Road but appellant ignored him and entered anyway. After entering the premises, appellee testified that appellant was screaming, yelling, and pushing and raised his arm as though he was about to punch appellee. It was at that point appellee punched appellant then immediately called police for help.

{¶ 45} Based on this testimony, the jury could rationally find that appellee was not at fault in creating the situation; appellee had a subjectively honest and objective reason to believe he was in physical danger, and the force he used was reasonable under the circumstances. Because there was some competent, credible evidence to support a judgment in favor of appellee on the grounds of self-defense, the verdict was not against the manifest weight of the evidence.

{¶ 46} Appellant also asserts the verdict was against the manifest weight of the evidence because appellee did not meet his burden to prove the affirmative defense of reasonable force used to eject a trespasser. Our determination that the manifest weight of the evidence supports the jury's verdict as to self-defense renders moot appellant's argument regarding trespass and we need not address it. Accordingly, we conclude the

verdict was not against the manifest weight of the evidence, and we overrule appellant's fourth and final assignment of error.

## VI. Disposition

{¶ 47} Based on the foregoing reasons, the trial court did not abuse its discretion in making evidentiary rulings or in instructing the jury, and the verdict is not against the manifest weight of the evidence. Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J. and BROWN, J., concur.

_____