OPINION
{¶ 1} Plaintiff-appellant, Steve Barker, dba Insurance Recruiting Specialists, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, Century Insurance Group. For the reasons that follow, we affirm the judgment of the common pleas court.
 {¶ 2} In 2002, Century Insurance Group sought candidates for a litigation specialist position and a litigation manager position. Plaintiff, a personnel recruiter, *Page 2 
submitted Roger DeKraker as a candidate for the litigation specialist position, and he submitted Ed Vallery as a candidate for the litigation manager position.
 {¶ 3} Both Mr. DeKraker and Mr. Vallery interviewed with Century Insurance Group. While interviewing for the litigation manager position, Mr. Vallery learned that, in addition to the litigation manager position, a litigation specialist position also was available at Century Insurance Group. At the time of his interview for the litigation manager position, however, Mr. Vallery was not interested in this litigation specialist position.
 {¶ 4} After negotiating a recruiting fee with plaintiff, Century Insurance Group offered the litigation specialist position to Mr. DeKraker. Mr. DeKraker later declined Century Insurance Group's offer of employment. Century Insurance Group did not tender an offer of employment to Mr. Vallery as to the litigation manager position.
 {¶ 5} Around April 2003, Mr. Vallery saw an advertisement from Century Insurance Group seeking candidates for a litigation specialist position. Because he was interested in this position, Mr. Vallery contacted David Gervers of Century Surety Company and informed him of his interest in this litigation specialist position. When he contacted Mr. Gervers, Mr. Vallery also informed Mr. Gervers that plaintiff no longer represented him. Century Insurance Group later hired Mr. Vallery as a litigation specialist.
 {¶ 6} After Century Insurance Group hired Mr. Vallery, plaintiff learned that Mr. Vallery had accepted a position with Century Insurance Group. Plaintiff thereafter demanded a recruiting fee from Century Insurance Group. A dispute between plaintiff and Century Insurance Group followed concerning whether Century Insurance Group owed a fee to plaintiff. *Page 3 
 {¶ 7} On June 17, 2004, alleging breach of contract, plaintiff sued Century Insurance Group in the Franklin County Court of Common Pleas. In his complaint, plaintiff asserted that he and Century Insurance Group entered into a written fee agreement that provided, among other things, that "[a] fee is due should any branch or division of your company hire a candidate that we have submitted for a period of one year from the interview date." Claiming that he performed his obligations under the contract, plaintiff alleged that Century Insurance Group breached the contract by failing to pay plaintiff for his services.
 {¶ 8} In its answer to plaintiff's complaint, Century Insurance Group denied that it entered into a written contract with plaintiff. Century Insurance Group, however, did admit that it received an invoice from plaintiff and that it had not paid this invoice.
 {¶ 9} Following a bench trial, the trial court issued a decision and entry, wherein it rendered findings of fact and conclusions of law. Finding in favor of Century Insurance Group, the trial court rendered judgment accordingly.
 {¶ 10} From the trial court's judgment in favor of Century Insurance Group, plaintiff now appeals and assigns two errors for our consideration:
 FIRST ASSIGNMENT OF ERROR
 THE COURT'S FINDING OF NO WRITTEN CONTRACT ENTITLING APPELLANT TO A FEE FOR THE PLACEMENT OF VALLERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 SECOND ASSIGNMENT OF ERROR
 THE COURT ERRED IN NOT FINDING THAT APPELLANT WAS ENTITLED TO PAYMENT FROM APPELLEE BASED ON A CONTRACT IMPLIED IN LAW. *Page 4 
 {¶ 11} By his first assignment of error, plaintiff asserts that the trial court's finding that no written contract existed between Century Insurance Group and plaintiff is against the manifest weight of the evidence.
 {¶ 12} Civil judgments that are "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. "[A]n appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80; see, also, Myers v. Garson
(1993), 66 Ohio St.3d 610, 616 (reaffirming the reasoning of SeasonsCoal, supra, and "hold[ing] that an appellate court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court").
 {¶ 13} When considering whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact were correct.Seasons Coal Co., at 79-80. The Seasons Coal court explained:
 The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. The interplay between the presumption of correctness and the ability of an appellate court to reverse a trial court decision based on the manifest weight of the evidence was succinctly set forth in the holding of this court in C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578
[8 O.O.3d 261]: "Judgments supported by some competent, *Page 5 
credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." See, also, Frankenmuth Mut. Ins. Co. v. Selz (1983), 6 Ohio St.3d 169, 172, 451 N.E.2d 1203; In re Sekulich (1981), 65 Ohio St.2d 13, 16, 417 N.E.2d 1014 [19 O.O.3d 192].
Id. at 80; see, also, State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus (holding that in a civil or criminal case, a determination of the weight of the evidence and credibility of witnesses is primarily for the trier of facts).
 {¶ 14} In In re D.F., Franklin App. No. 06AP-1052, 2007-Ohio-617, this court also observed:
 "While it is for the court to pass upon the competency of a witness, it is a question for the jury to say whether a witness is to be believed, since it sees the manner in which the witness gave his testimony. The veracity of the witness is for its consideration, and it is a generally established rule that the credibility of witnesses, or the extent of the credit due them, is a question for the determination of the jury upon all the competent facts and circumstances of the case before it. The jury may believe all that a witness has said, or part or none of it. Likewise, the jurors may give to the testimony of a witness much, little, or no weight. * * *"
 * * *
 When there is no jury, this function is that of the trial court as trier of fact.
Id. at ¶ 26, fn. 3, quoting Maxton Motors, Inc. v. Schindler (Dec. 26, 1984), Defiance App. No. 4-83-23, quoting 44 Ohio Jurisprudence 3d (1983) 375, Evidence and Witnesses. Cf. State v. Woodward, Franklin App. No. 03AP-398, 2004-Ohio-4418, at ¶ 18, cause dismissed,103 Ohio St.3d 1489, 2004-Ohio-5606, reconsideration denied, 104 Ohio St.3d 1428,2004-Ohio-6585.
 {¶ 15} In its decision, the trial court, in its role as trier of fact, concluded: *Page 6 
 The Court is not convinced that Century Insurance (a sophisticated insurance company) would sign a fee agreement that is not specific to any individual and which, on its face, would entitle Mr. Barker to a fee equal to 25% of the first year's salary of any person who was introduced to Century Insurance and is thereafter employed in any position within one year of the introduction. Instead, the Court finds more credible the testimony of Mr. Gervers and Mr. Paszkiewicz that Century Insurance, with respect to positions such as these, would honor the recruiter's contribution by negotiating a fee only if it wanted to make an offer to a candidate introduced by the recruiter and if the overall cost of the offer (including the fee) was within the budget for the position.
(Decision and Entry, 5-6.)
 {¶ 16} Here, the trial court, as the trier of fact, was free to believe all, part, or none of plaintiff's testimony regarding the purported written fee agreement between the parties, and the trial court could assign much, little, or no weight to plaintiff's testimony. In reD.F., at ¶ 26, fn. 3, quoting Maxton Motors, Inc., supra. After reviewing the evidence, we cannot conclude that plaintiff has rebutted the presumption of correctness regarding the trial court's finding that Century Insurance Group would not have agreed to a fee agreement "that is not specific to any individual and which, on its face, would entitle Mr. Barker to a fee equal to 25% of the first year's salary of any person who was introduced to Century Insurance and is thereafter employed in any position within one year of the introduction." See, generally, Seasons Coal, at 79-80.
 {¶ 17} In its decision, the trial court also concluded "that Mr. Barker superimposed Mr. Paszkiewicz's signature from the candidate agreement form that he signed for Mr. Barker. This conclusion is further supported by the fact that the signature lines are not aligned." (Decision and Entry, at 7.) According to plaintiff, absent any expert witness *Page 7 
testimony as to whether Mr. Paszkiewicz's signature was superimposed and absent any expert testimony as to whether signature lines were misaligned, such a conclusion by the trial court constitutes reversible error.
 {¶ 18} "Where an ultimate fact to be determined by the jury is one depending upon the interpretation of certain scientific facts which are beyond the experience, knowledge or comprehension of the jury, a witness qualified to speak as to the subject matter involved may express an opinion as to the probability or actuality of a fact pertinent to an issue in the case, and the admission of such opinion in evidence does not constitute an invasion or usurpation of the province or function of the jury, even though such opinion is on the ultimate fact which the jury must determine." Shepherd v. Midland Mut. Life Ins. Co. (1949),152 Ohio St. 6, at paragraph two of the syllabus.
 {¶ 19} In McKay Machine Co. v. Rodman (1967), 11 Ohio St.2d 77, 81, the Supreme Court of Ohio stated that "this court has continuously held that in all proceedings involving matters of scientific, mechanical, professional, or other like nature, requiring special study, experience or observation not within the knowledge of laymen in general, expert testimony is admissible to aid the court or the jury in arriving at a correct determination of the litigated issue." See, also, Ramage v.Cent. Ohio Emergency Serv., Inc. (1992), 64 Ohio St.3d 97, 102, citing former Evid.R. 702 and 703 (stating that "[u]nless a matter is within the comprehension of a layperson, expert testimony is necessary").
 {¶ 20} Here, the ultimate issue for determination by the trial court, as the trier of fact, resolved to whether defendant breached a fee agreement. Whether defendant breached a fee agreement is not "a matter of scientific, mechanical, professional, or like *Page 8 
nature." McKay, at 81. To the contrary, the task of resolving whether defendant breached a fee agreement was within the experience, knowledge, or comprehension of the trial court, as the trier of fact.
 {¶ 21} The trial court's superfluous conclusions that plaintiff superimposed Mr. Paszkiewicz's signature on the fee agreement form and that signature lines on a photocopy of the purported fee agreement were misaligned simply support the trial court's earlier finding that Century Insurance Group would not have agreed to a fee agreement "that is not specific to any individual and which, on its face, would entitle Mr. Barker to a fee equal to 25% of the first year's salary of any person who was introduced to Century Insurance and is thereafter employed in any position within one year of the introduction." Whether plaintiff superimposed Mr. Paszkiewicz's signature on the fee agreement form, and whether signature lines on a photocopy of the purported fee agreement were misaligned, essentially are ancillary and derivative issues that defendant raised in its defense.
 {¶ 22} Because whether plaintiff superimposed Mr. Paszkiewicz's signature on the fee agreement form, and whether signature lines on a photocopy of the purported fee agreement were misaligned, essentially are ancillary and derivative issues, we are therefore unconvinced by plaintiff's claim that, absent expert testimony, the trial court's conclusion as to these ancillary and derivative issues constitutes reversible error.
 {¶ 23} Finally, we are not persuaded by plaintiff's claim that the trial court erred when it concluded: "[T]he Court believes that Mr. Paszkiewicz did not have authority to sign such [a fee agreement] and, in fact, would not have signed such an agreement *Page 9 
without Mr. Gervers' explicit direction and approval. If such an agreement had been signed by Mr. Paszkiewicz, he certainly would have remembered it."
 {¶ 24} Based on our review of Mr. Gervers' testimony and Mr. Paszkiewicz's testimony, we find those testimonies, if believed by the trial court, constitute some competent credible evidence to support the trial court's conclusion. We, therefore, cannot conclude that this conclusion by the trial court is against the manifest weight of the evidence.
 {¶ 25} Accordingly, for the reasons set forth above, we overrule plaintiff's first assignment of error.
 {¶ 26} By his second assignment of error, plaintiff asserts that the trial court erred by failing to find that plaintiff was entitled to recovery under an implied-in-law contract. For its part, Century Insurance Group contends that plaintiff failed to advance a claim in the trial court under a constructive contract theory and, as a consequence, plaintiff now is prevented from asserting an implied-in-law contract claim for the first time on appeal. Century Insurance Group further asserts that plaintiff's claim for recovery under an express contract, which was litigated before the common pleas court, is inconsistent with plaintiff's attempt on appeal to seek recovery under a constructive contract.
 {¶ 27} "[I]t is well-established that there are three classes of simple contracts: express, implied in fact, and implied in law."Legros v. Tarr (1989), 44 Ohio St.3d 1, 6, citing Hummel v. Hummel
(1938), 133 Ohio St. 520, 525; Rice v. Wheeling Dollar Savings Trust (1951), 155 Ohio St. 391. In Legros, the Supreme Court of Ohio explained:
 "In express contracts the assent to its terms is actually expressed in offer and acceptance. In contract implied in fact the meeting of the minds, manifested in express contracts by *Page 10 
offer and acceptance, is shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding. In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relationship springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual. In truth contracts implied in law are often called quasi contracts or constructive contracts. Columbus, Hocking Valley Toledo Ry. Co. v. Gaffney, 65 Ohio St., 104, 61 N.E., 152."
Id. at 6-7, quoting Hummel, at 525.
 {¶ 28} "A quasi contract is not the result of a meeting of the minds but is implied and imponed by law without the consent of the obligor to prevent the obligor from enjoying benefits which in equity and good conscience he is not entitled to retain." Hughes v. Oberholtzer (1954),162 Ohio St. 330, at paragraph one of the syllabus.
 {¶ 29} In Hughes, the Supreme Court of Ohio stated that "[i]t is generally agreed that there can not be an express agreement and an implied contract for the same thing existing at the same time." Id. at 335, citing 17 Corpus Juris Secundum, 321, Contract, Section 5; 12 American Jurisprudence, 505, Section 7; Creighton v. City of Toledo
(1869), 18 Ohio St. 447. After acknowledging general agreement that an express agreement and an implied contract for the same thing cannot exist at the same time, Hughes, at 335, the Hughes court, however, further stated:
 * * * [B]y the weight of authority, even though minds of the parties have not met as to some essential term of the contract, one who has furnished some materials or labor may recover the reasonable value of the materials or services. The promise to pay such reasonable value is implied. This is not in reliance upon the contract or by way of enforcement of the contract. It is the enforcement of an equitable right *Page 11 
through the fiction called quasi contract. Though equitable in nature and origin, the right may be enforced at law.
 The purpose of the quasi-contract action is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant. Thus, while equity might compel a return of the article involved, the obligation which is recognized and enforced in law is the obligation to pay the reasonable worth of the benefit received.
 The recovery in a quasi-contract action is based upon value and is imposed without the assent of the defendant to prevent such defendant from enriching himself at the expense of the plaintiff.
Id., at 335.
 {¶ 30} Here, however, we do not need to resolve whether plaintiff is entitled to recovery under a constructive contract claim. In the present case, plaintiff failed to advance a claim under a constructive contract theory in the trial court. Therefore, plaintiff cannot now change the theory of his case and present new arguments for the first time on appeal. Wynn v. Taylor-Dunn Mfg., Franklin App. No. 02AP-1445,2003-Ohio-6472, at ¶ 12, appeal not allowed (2004), 102 Ohio St.3d 1412,2004-Ohio-1763. See, also, Kalish v. Trans World Airlines, Inc. (1977),50 Ohio St.2d 73, syllabus (holding that a party who proceeds under a state cause of action may not for the first time on appeal advance a federal cause of action that was not considered by the courts below);Republic Steel Corp. v. Bd. of Revision of Cuyahoga Cty. (1963),175 Ohio St. 179, syllabus (holding that "[i]ssues not raised in the lower court and not there tried and which are completely inconsistent with and contrary to the theory upon which appellants proceeded below cannot be raised for the first time on review"); State ex rel Guiterrez v.Trumbull Cty. Bd. *Page 12 
 of Elections (1992), 65 Ohio St.3d 175, 177 (stating that "[a]ppellant cannot change the theory of his case and present these new arguments for the first time on appeal").
 {¶ 31} Because plaintiff failed to assert his constructive contract claim in the trial court, we conclude that plaintiff is estopped from raising it for the first time on appeal. We therefore decline to consider in this appeal whether plaintiff is entitled to recovery under an implied-in-law contract. Furthermore, because plaintiff failed to advance a claim under an implied-in-law contract in the trial court, we cannot conclude that the trial court erred by failing to consider whether plaintiff was entitled to recovery under a constructive contract.
 {¶ 32} For the reasons set forth above, we therefore overrule plaintiff's second assignment of error.
 {¶ 33} Accordingly, having overruled both of plaintiff's assignments of error, we therefore affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 SADLER, P.J., and KLATT, J., concur. *Page 1