[Cite as *Jones v. Carpenter*, 2019-Ohio-619.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Mark E. Jones et al., :

        Plaintiffs-Appellees/ :
        Cross-Appellants,

                   :         No. 17AP-401

v.                           (C.P.C. No. 13CV-8943)

                   :

Ronda Carpenter et al.,           (REGULAR CALENDAR)

                   :

        Defendants-Appellants/
        Cross-Appellees.      :

---

## D E C I S I O N

### Rendered on February 21, 2019

---

**On brief:** *Lowe and Clark, LLC,* and *David K. Lowe,* for appellees/cross-appellants. **Argued:** *David K. Lowe.*

**On brief:** *Eugene R. Butler Co., LPA,* and *Eugene R. Butler,* for appellants/cross-appellees. **Argued:** *Eugene R. Butler.*

---

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendants-appellants/cross-appellees, Ronda and Arthur Carpenter, appeal from the May 5, 2017 amended judgment entry of the Franklin County Court of Common Pleas finding, among other things, that both parties breached a contract. Plaintiffs-appellees/cross-appellants, Mark E. Jones and A&A Towing, Inc., have cross-appealed. For the reasons that follow, we affirm the judgment of the trial court.

## I. FACTUAL AND PROCEDURAL HISTORY

{¶ 2} Ronda Carpenter was the owner of A&A Towing, Inc. ("A&A"), and she and her husband, Arthur Carpenter, ran the business. Ronda Carpenter wanted to retire from the business as an owner due to health issues, but Arthur Carpenter wished to continue working for the company for the next four years as an independent contractor. Ronda

Carpenter sold all the shares she owned in A&A to Mark Jones in 2012 pursuant to a Stock Purchase Agreement ("SPA") executed on September 6, 2012, with an effective date of April 1, 2012. Jones was a contractor who had been working with the company for the past five years.

{¶ 3} According to the SPA, Jones was to pay Carpenter $2,083.33 per month for 24 months with no interest for a total of $50,000.00 for the purchase of A&A. A&A had four tow trucks, two of which were financed, and Jones was to take over responsibility for all payments and obligations still owed on the two trucks. Jones did this by making the payments to the Carpenters who then paid the loan balances. In addition, Jones was to hire Arthur Carpenter as an independent contractor for four years at a rate of $400 to $500 per week. After April 1, 2012, Jones was to receive all the income that came in from A&A and was responsible for all liabilities of the company from April 1, 2012 forward. The SPA contained a clause at page 7 that stated: "Upon any default by either party, the prevailing party shall be entitled to costs and reasonable attorney's fees."

{¶ 4} Ronda Carpenter had several bank accounts that she used for A&A. One account was the Union Savings Bank ("USB") account that was controlled by the Carpenters. Credit card payments and checks payable to A&A were deposited into the USB account. Ronda Carpenter put Jones' name on one account at PNC Bank on or about May 1, 2012. Arthur Carpenter instructed Jones not to tell A&A customers that Jones was taking over because A&A might lose customers. The Carpenters kept their personal address as the address for the business. Checks went to the Carpenters' personal address. Payments under the agreement were made in a somewhat unusual manner. The Carpenters did not inform the insurance carrier of the change in ownership and, therefore, Jones had to pay Ronda Carpenter who then paid the insurance premiums. The Carpenters would offset Jones' payments under the agreement because they were receiving checks and credit card payments and then they would tell Jones what he should pay. Jones was instructed to pay Arthur Carpenter for his independent contractor work by making a check payable to Ronda Carpenter or with cash so as not to jeopardize Arthur Carpenter's workers' compensation benefits. Jones was late making payments at some times.

{¶ 5} The relationship between Jones and the Carpenters broke down some time in the spring of 2013. Jones learned that in addition to the insurance for the A&A tow

trucks, he was paying the insurance premiums on vehicles owned by the Carpenters that were not part of the SPA. Jones requested an accounting, but none was forthcoming. Jones and A&A filed an initial complaint for declaratory judgment and damages on August 13, 2013. Jones asserted that he had made payments through several sources to comply with the SPA, but he was unsure of the amount of payments and the balance due. He sought damages and an accounting.

{¶ 6} The Carpenters filed a counterclaim asserting claims for breach of contract, forfeiture, injunctive relief, and abuse of process. In particular, the Carpenters alleged that Arthur Carpenter had been damaged in the amount of $83,200 because Jones never hired Arthur Carpenter as an independent contractor under the SPA. Jones, however, asserted that Arthur Carpenter worked for one year with A&A after ownership was transferred.

{¶ 7} The trial court granted a motion for partial summary judgment in favor of the Carpenters after Jones' attorney failed to file a memorandum in opposition to the motion. Jones obtained new counsel and, after a motion to reconsider was filed, the trial court set aside the summary judgment decision, found genuine issues of material fact, and granted leave for Jones and A&A to file an amended complaint.

{¶ 8} In their amended complaint, Jones and A&A asserted claims for breach of contract, unjust enrichment, misrepresentation, and declaratory judgment. Jones and A&A alleged that the Carpenters breached the contract by demanding and accepting more payments than were required under the SPA. The Carpenters filed an amended answer and counterclaim asserting claims for breach of contract, forfeiture, injunctive relief, and abuse of process. The Carpenters' breach of contract claim was based on the alleged failure to pay Arthur Carpenter for four years of independent contractor work.

{¶ 9} The trial court then conducted a three-day bench trial. By mutual agreement, the parties submitted written post-trial briefs in lieu of closing arguments.

{¶ 10} After hearing all the testimony, the trial court issued a judgment entry on December 29, 2015, finding for Jones and A&A in the amount of $53,797.21, and for the Carpenters in the amount of $62,400.00. The judgment in favor of the Carpenters was reduced from their original demand because, at trial, Arthur Carpenter admitted that he did work as an independent contractor for one year and was paid for the work.

{¶ 11} The Carpenters filed a motion for a new trial which was denied by the trial court on February 19, 2016.  In denying the motion, the trial court stated, in pertinent part:

> The Court found Defendants were not credible when testifying and that Plaintiff Mark Jones and Elizabeth Rodriguez were credible and weighed that factor when issuing the Judgment.

(Feb. 19, 2016 Entry at 2.)

{¶ 12} The Carpenters filed a notice of appeal, and Jones and A&A filed a cross-appeal.  On February 7, 2017, this court dismissed the appeal for lack of jurisdiction, finding that the December 29, 2015 judgment did not dispose of all of the combined claims of the parties.  *Jones v. Carpenter*, 10th Dist. No. 16AP-126, 2017-Ohio-440, ¶ 12.

{¶ 13} On May 5, 2017, the trial court issued an amended judgment entry that addressed all of the claims.

{¶ 14} In summary, the trial court determined:

> Plaintiffs' Claims
> Count I: Breach of Contract—The court found for plaintiffs Jones and A&A in the amount of $32,997.21;
>
> Count II: Unjust Enrichment—The court dismissed plaintiffs Jones and A&A's claim for unjust enrichment;
>
> Count III: Misrepresentation—The court found for defendants Carpenters as to the claim of misrepresentation;
>
> Count IV: Declaratory Judgment—The court granted declaratory judgment in favor of plaintiffs Jones and A&A as to tenancy.
>
> Defendants' Counterclaims
> Count I: Breach of Contract—The court found for defendants Carpenters in the amount of $62,400.00;
>
> Count II: Forfeiture—The court found that defendants Carpenters failed to demonstrate forfeiture was appropriate in the matter;
>
> Count III: Injunctive Relief—The court found that defendants Carpenters failed to demonstrate that injunctive relief was appropriate in the matter;
>
> Count IV: Abuse of Process—The court found for plaintiffs Jones and A&A as to the counterclaim for abuse of process.

{¶ 15} The trial court rendered a net judgment in favor of defendants, the Carpenters, in the amount of $29,402.79, but found that since both parties breached the contract, there was no prevailing party and, therefore, no award of attorneys' fees.

{¶ 16} The Carpenters appealed and Jones and A&A cross-appealed.

## II. ASSIGNMENTS OF ERROR

{¶ 17} On appeal, the Carpenters assert three assignments of error:

> [I.] The trial court erred as a matter of law in its determination that defendants were not the prevailing party on the breach of contract claim.
>
> [II.] The award of $7,185.13 included in the damage award to plaintiffs is contrary to the manifest weight of the evidence.
>
> [III.] The trial court erred as a matter of law in ruling that defendants failed to prove that plaintiffs did not pay the Yellow Pages advertisement cost.

{¶ 18} In their cross-appeal, Jones and A&A assert the following six assignments of error:

> [I.] The Trial Court Erred at law in dismissing Plaintiffs claim for unjust enrichment.
>
> [II.] The Trial Court Erred in finding Plaintiff failed to prove all the elements of intentional misrepresentation.
>
> [III.] The Trial Court Erred in finding Plaintiff failed to prove all the elements of negligent misrepresentation.
>
> [IV.] The Trial Court Erred as a matter of law and equity in determining that Plaintiff's claim for declaratory judgment requesting the court to determine that Plaintiff was not obligated to pay Defendant Arthur Carpenter for three years was not appropriate.
>
> [V.] The Trial Court Erred as a matter of law and equity by determining that Arthur Carpenter was entitled to the recovery of three years of independent contractor services.
>
> [VI.] The Trial Court Erred as a matter of law and equity in determining that Defendants were not required to mitigate their damages.

## III. ANALYSIS

### A. Prevailing Party

{¶ 19} In their first assignment of error, the Carpenters assert that the trial court erred in not designating them the prevailing party for purposes of an award of attorney fees. As noted above, the SPA contained a clause at page 7 that stated: "Upon any default by either party, the prevailing party shall be entitled to costs and reasonable attorney's fees."

{¶ 20} In its amended judgment entry of May 5, 2017, the trial court stated: "Both parties in this matter were found to be in breach, thus the Court finds that there was no prevailing party. Therefore, an award of attorneys' fees is not appropriate." (May 5, 2017 Am. Jgmt. Entry at 10.) The effect of the trial court's awards for breach of contract was a net judgment in favor of the Carpenters for $29,402.79.

{¶ 21} The Carpenters argue that, because they were awarded a net judgment, they should be deemed the prevailing party. In support of this argument, they cite *J&H Reinforcing v. Ohio School Facilities Comm.*, 10th Dist. No. 13AP-732, 2014-Ohio-1963, ¶ 18 ("Furthermore, even though both parties prevailed at trial, the trial court was well within its discretion to award costs to J&H as the prevailing party, as J&H was granted a net award of $778,924.33 after setting off J&H's award on its claims by OSFC's award on its counterclaim.").

{¶ 22} "Normally, decisions on attorney fee awards are reviewed for abuse of discretion." *L.G. Harris Family L.P.I. v. 905 S. Main St. Englewood, LLC*, 2d Dist. No. 26682, 2016-Ohio-7242, ¶ 37. However where, as here, the asserted error is that the trial court failed to enforce a fee agreement based on contract interpretation, the decision is subject to de novo review. *Id.*

{¶ 23} " 'A "prevailing party" generally is the party in whose favor the verdict or decision is rendered and judgment entered.' " *J&H Reinforcing* at ¶ 18, quoting *Winona Holdings, Inc. v. Duffey*, 10th Dist. No. 13AP-471, 2014-Ohio-519, ¶ 9, quoting, *Hikmet v. Turkoglu*, 10th Dist. No. 08AP-1021, 2009-Ohio-6477, ¶ 74.

{¶ 24} Furthermore, "prevailing party" has also been defined as:

> The party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered. * * * To be such does not

> depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, or other proceeding, the party who had made a claim against the other, has successfully maintained it.

*Hikmet* at ¶ 75, citing *Moga v. Crawford*, 9th Dist. No. 23965, 2008-Ohio-2155, ¶ 6, quoting *Woodfork v. Jones*, 2nd Dist. No. 15841 (Feb. 21, 1997).

{¶ 25} "Default" is defined as "The omission or failure to perform a legal or contractual duty; esp. the failure to pay a debt when due." *Black's Law Dictionary* 449 (8th Ed.2004).

{¶ 26} While the trial court indicated that there was no prevailing party, when one looks at these definitions, it is equally plausible that both parties were in default and both parties were prevailing parties in certain respects in this action. Both parties prevailed at least in part on their breach of contract claims, but failed to prevail in other parts of their cases. There were two major issues with respect to the breach of contract claims. Jones and A&A prevailed when they established that the Carpenters breached the SPA by taking income that came in after April 1, 2012 that belonged to Jones and A&A. The Carpenters prevailed when they established that Arthur Carpenter was entitled to compensation for three years of independent contractor services.

{¶ 27} In the context of costs under Civ.R. 54(D), the Supreme Court of Ohio has stated that denying costs to both parties can be appropriate when neither party entirely prevails. *State ex rel. Reyna v. Natalucci-Persichetti*, 83 Ohio St.3d 194, 198 (1998).

{¶ 28} As such, the trial court did not err in concluding that neither side was the prevailing party, since both prevailed in certain respects, and both lost in certain respects. As a result, requiring each side to bear their own attorney fees and costs was a reasonable determination based on the language of the contract.

{¶ 29} The Carpenters' first assignment of error is overruled.

**B. Missing Checks**

{¶ 30} In their second assignment of error, the Carpenters contend that Jones and A&A failed to prove that $7,185.13 of the damages awarded to Jones and A&A belonged to them as income of A&A.

{¶ 31} There were certain amounts deposited into the USB account for which Jones and A&A could not produce checks at trial, and those amounts were identified on plaintiffs'

exhibits as "Missing Check." (*See, e.g.*, Plaintiffs' Ex. No. 14.) Jones did not see the USB statements until suit was filed.  The USB account was under the control of the Carpenters.

{¶ 32} Jones and A&A argued that all the money deposited into the USB account controlled by the Carpenters belonged to A&A.  The SPA specified that Jones and A&A retained the benefit of all income and were responsible for all liabilities from April 1, 2012 forward. Credit card payments and checks payable to A&A after April 1, 2012 were deposited into the USB account.  Arthur Carpenter admitted that Jones was entitled to all credit card payments disclosed in the USB statement.  Arthur Carpenter also admitted that the money he was paid for independent contractor work came from the USB account.

{¶ 33}  In *Cameron v. Univ. of Toledo*, 10th Dist. No. 16AP-834, 2018-Ohio-979, ¶ 13-14, this court laid out the standard of review for claims that a judgment is against the manifest weight of the evidence: " 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Rosenshine v. Med. College Hosps.*, 10th Dist. No. 11AP-374, 2012-Ohio-2864, ¶ 9, quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978). " 'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief." ' " (Emphasis omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). "Under the civil [manifest-weight-of-the-evidence] standard, examining the evidence underlying the trial judge's decision is a prerequisite to determining whether the trial court's judgment is supported by some competent, credible evidence." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 40. *See also Eastley* at ¶ 15 ("The phrase 'some competent, credible evidence' * * * presupposes evidentiary weighing by an appellate court to determine whether the evidence is competent and credible."). Accordingly, a reviewing court must weigh the evidence presented in the trial court.

{¶ 34} However, in weighing the evidence, we are "mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984) (noting that a reviewing court gives deference to the finder of fact

because "the [finder of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony"). " ' "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." ' " *Eastley* at ¶ 21, quoting *Seasons Coal Co.* at 80, fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-92 (1978). "Thus, in reviewing a judgment under the manifest-weight standard, a court of appeals weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way." *Sparre v. Ohio Dept. of Transp.,*10th Dist. No. 12AP-381, 2013-Ohio-4153, ¶ 10, citing *Eastley* at ¶ 20.

{¶ 35} Here, the evidence at trial showed that all of the checks deposited into the USB account after April 1, 2012 belonged to A&A under the provision of the SPA that stated the buyer retains the benefit of all income of the company from April 1, 2012 forward. Arthur Carpenter admitted as such at trial but then asserted at trial that checks deposited to that account were to pay Arthur for undocumented cash loans. The trial court found Arthur Carpenter's testimony not to be credible and Jones' testimony to be credible.

{¶ 36} The trial court's judgment in favor of Jones and A&A with respect to the USB account was supported by some competent, credible evidence and, as such, will not be reversed as being against the manifest weight of the evidence.

{¶ 37} The Carpenters' second assignment of error is overruled.

### C. Yellow Pages

{¶ 38} The trial court concluded that the Carpenters failed to prove they were entitled to payment by Jones and A&A for Yellow Pages advertising. In their third assignment of error, the Carpenters argue that the trial court erred in making that determination, essentially arguing that the trial court's determination was against the manifest weight of the evidence.

{¶ 39} The SPA required Jones and A&A to keep the Yellow Pages ad for A&A in place after April 1, 2012. It was not disputed that A&A and the Carpenters agreed to split the advertising costs for A&A and another towing company owned by the Carpenters in May of 2013. Arthur Carpenter testified that the bills for the Yellow Pages advertising were

unpaid and outstanding as of the day of trial. However, no unpaid or outstanding bills were admitted into evidence. Elizabeth Rodriquez, Jones' girlfriend and the manager of A&A testified that she believed that she had paid all the Yellow Pages advertising costs. The trial court made a determination that the Carpenters were not credible when testifying and that Mark Jones and Elizabeth Rodriguez were credible and weighed that factor when issuing the judgment. As such, the trial court's determination that the Carpenters failed to prove they were entitled to Yellow Pages advertising costs was not against the manifest weight of the evidence.

{¶ 40} The Carpenters' third assignment of error is overruled.

### D. Unjust Enrichment

{¶ 41} In the cross-appellants' first assignment of error, Jones and A&A contend that the trial court erred in dismissing their claim for unjust enrichment. In order to prove a claim for unjust enrichment, a plaintiff must establish a benefit conferred by the plaintiff on the defendant, the defendant's knowledge of the benefit, and the defendant's retention of the benefit under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

{¶ 42} The trial court dismissed the claim for unjust enrichment when it found that the parties' claims were governed by an express contract. As the trial court noted, a party may plead, in the alternative, both a breach of contract claim and a claim for unjust enrichment without negating the validity of either claim. *Cristino v. Admr.,* 10th Dist. No. 12AP-60, 2012-Ohio-4420, ¶ 26. However, a party may not recover for the same services under both a contractual claim and a claim for unjust enrichment, but may recover under an unjust enrichment theory if the contractual claim fails. Additionally, the trial court found that Jones and A&A had not pled bad faith, fraud, or other illegality in their amended complaint. Absent bad faith, fraud or some other illegality, an equitable action for unjust enrichment will not lie when the subject of the claim is governed by an express contract. *Cent. Allied Ents., Inc. v. Adjutant Gen. Dept.*, 10th Dist. No. 10AP-701, 2011-Ohio-4920, ¶ 39. Although some claims such as fraud have heightened pleading requirements, a claim of unjust enrichment is not subject to any special pleading requirements. *Strahler v. Vessels,* 4th Dist. No. 11CA24, 2012-Ohio-4170, ¶ 9.

{¶ 43} Here, Jones and A&A argue that the evidence supports a finding that the Carpenters acted in bad faith when they intentionally took payments which belonged to Jones and A&A when they had no legitimate right to do so.

{¶ 44} Jones and A&A overlook the fact that they were awarded all the relief they requested in their breach of contract claim. Thus, they were not entitled to a double recovery under the quasi-contractual theory of unjust enrichment. Moreover, Jones and A&A have only asserted their bad faith claims for the first time on appeal.

{¶ 45} The first cross-assignment of error is overruled.

### E. Intentional Misrepresentation

{¶ 46} In their second cross-assignment of error, Jones and A&A argue the trial court erred in finding that they failed to prove all the elements of their claim for intentional misrepresentation.

{¶ 47} In order to prove a claim for intentional misrepresentation, a plaintiff must prove: (a) a representation or, where there is a duty to disclose, a concealment of fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. No. 04AP-980, 2006-Ohio-638, ¶ 82.

{¶ 48} Jones and A&A claimed that the Carpenters intentionally concealed the fact that there were payments that belonged to Jones and A&A; that the payments were material to the performance of the terms of the SPA; that the Carpenters knew that they were taking the payments in that they received monthly statements from the USB account which disclosed how much they were taking; that the Carpenters intended to mislead Jones and A&A by not accounting for the payments; that Jones and A&A relied on the Carpenters' misrepresentations or concealment of the payments; and Jones and A&A were injured by such reliance.

{¶ 49} The trial court found that Jones and A&A failed to provide evidence sufficient to prove Ronda Carpenter's intent to mislead Jones into relying on her representations.

{¶ 50} Again, this is an issue of whether the trial court's decision was against the manifest weight of the evidence.

{¶ 51} Ronda Carpenter testified that she recorded payments into her Quickbooks program if the payments related to work prior to April 1, 2012. If a check or part of a check was for work done after April 1, 2012, she gave the check to her husband, Arthur Carpenter, who decided with Jones how the payment was to be allotted. There was much testimony that, although the SPA governed the parties, there were verbal agreements and arrangements made to accept lesser payments from Jones in exchange for payments that came in by check or credit card that were credited against the amounts Jones owed under the SPA. The trial court could not find intent to mislead from this course of conduct.

{¶ 52} Additionally, the trial court awarded to Jones and A&A all the deposits into the USB account that they claimed they were entitled to, and they received as damages all the money they claimed had been improperly deposited into the USB account.

{¶ 53} The second cross-assignment of error is overruled.

**F. Negligent Misrepresentation**

{¶ 54} In their third cross-assignment of error, Jones and A&A argue that the trial court erred in finding they failed to prove all the elements of negligent misrepresentation. The trial court found that Jones and A&A failed to supply the trial court with specific argument to support their claim in their closing brief.

{¶ 55} Negligent misrepresentation occurs when one supplies false information for the guidance of others in their business transactions. *Interstate Gas Supply, Inc.* at ¶ 90, quoting *Manno v. St. Felicitas Elementary School*, 161 Ohio App.3d 715, 2005-Ohio-3132, ¶ 34 (8th Dist.) "A negligent misrepresentation does not lie for omissions; there must be some affirmative false statement." *Id.* at ¶ 34.

{¶ 56} Here, Jones and A&A failed to supply the trial court with evidence of any specific affirmative misrepresentations made by the Carpenters. In addition, they asserted no claim for damages other than the contract damages that they claimed and were awarded.

{¶ 57} The third cross-assignment of error is overruled.

### G. Three Years of Services

{¶ 58} In their fourth and fifth cross-assignments of error, Jones and A&A contend that the trial court erred in awarding compensation to Arthur Carpenter for three years of independent contractor services.

{¶ 59} The issue is one of contract construction and interpretation which involves issues of law that we review de novo. *Bluemile, Inc. v. Atlas Indus. Contrs., Ltd.*, 10th Dist. No. 16AP-789, 2017-Ohio-9196, ¶ 13

{¶ 60} Jones and A&A sought a declaration that they only had an obligation to offer an opportunity for work to Arthur Carpenter, and if he refused such work, then Jones and A&A had no obligation to pay him pursuant to the SPA. There was conflicting testimony at trial as to whether Jones refused to provide further work to Arthur Carpenter after the first year when the relationship between the parties began to sour, or whether Arthur Carpenter quit and refused to accept further work.

{¶ 61} Jones and A&A's interpretation of the contract is contrary to the language of the SPA. The SPA provided that Jones and A&A had an obligation to hire Arthur Carpenter as an independent contractor for four years at a rate of $400 to $500 per week. In pertinent part, the SPA provided as follows:

> Arthur Carpenter as independent contractor. Buyer shall hire Arthur Carpenter, seller's husband, as an independent contractor for four (4) years after the Effective Date at a rate of $400 to $500 per week. The manner of work shall be the same as what Mr. Carpenter is doing at the time of the Effective Date.

(Plaintiffs' Ex. No. 1, SPA at 2.)

{¶ 62} At the time of the effective date of the SPA, Arthur Carpenter was dispatching and towing vehicles. It was established at trial that Carpenter was hired and was paid for the first year of the four-year obligation. The SPA provision was included in a section entitled "Other Obligations," and contained mandatory "shall hire" language. The trial court did not err in concluding that Jones and A&A had breached this provision by failing to pay Arthur Carpenter for the remaining three years of the obligation.

{¶ 63} Jones and A&A have raised a new argument for the first time on appeal that the Carpenters' alleged bad faith excuses Jones and A&A from their obligation under the SPA to pay Carpenter. Under Ohio law, arguments raised for the first time on appeal are

improper. *E.F. v. Seymour*, 10th Dist. No. 18AP-17, 2018-Ohio-3946, ¶ 27. Jones and A&A are precluded from presenting a new theory for the first time on appeal. *Barker v. Century Ins. Group*, 10th Dist. No. 06AP-377, 2007-Ohio-2729, ¶ 30.

{¶ 64} The fourth and fifth cross-assignments of error are overruled.

## H. Mitigation

{¶ 65} In their sixth cross-assignment of error, Jones and A&A contend the trial court erred in determining that the Carpenters were not required to mitigate their damages. The trial court did not make an explicit determination that the Carpenters were not required to mitigate their damages. Instead, the trial court awarded Arthur Carpenter damages of $62,400 which represented three years of independent contractor work at $400 per week. At trial, it was established that Arthur Carpenter started a new company, K&K Towing in March 2013, in which the company grossed $43,515 in 2013 and $144,809 in 2014. However, Arthur Carpenter testified that he could have earned much more if Jones and A&A had provided him with the additional three years of work under the contract.

{¶ 66} Based on log sheets that were admitted at trial, it was quite plausible that Arthur Carpenter could have done between three and eight tows per week to achieve the $400 per week contract amount. The trial court was within its discretion to determine that Arthur Carpenter could continue to do the work he engaged in with K&K Towing and still do work for A&A so as to collect $400 per week.

{¶ 67} The sixth cross-assignment of error is overruled.

## IV. CONCLUSION

{¶ 68} Based on the foregoing, we overrule the Carpenters' three assignments of error and we overrule Jones' and A&A's six cross-assignments of error. We affirm the May 5, 2017 judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and BRUNNER, JJ., concur.

_____